[Crim. No. 42844. Second Dist., Div. Three. Oct. 27, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
BAHA ASGARI, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*\*Pursuant to California Rules of Court, rule 976.1 this opinion has been certified for publication with the exception of those portions hereafter noted. (See post, pp. 110 and 113.)*

**COUNSEL**

Charvet & Stewart, Tracy L. Stewart and William T. Charvet for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LUI, J.—**

### SUMMARY

After a jury trial, appellant Baha Asgari was convicted of murder in the first degree in violation of Penal Code section 187. His first trial had ended in a mistrial after the jury deadlocked.

Subsequent to the jury verdicts, new counsel was substituted in place of appellant's trial counsel. Appellant then moved for a new trial which was denied. He was sentenced to state prison for a term of 25 years to life with proper credits for time served and good/work time. He appeals from the judgment of conviction.

For the reasons stated below, we reject appellant's contentions regarding the incompetency of his trial counsel and affirm his judgment of conviction.

STATEMENT OF FACTS

The victim, Joyce Asgari, and appellant had been married. Their marital relationship had disintegrated and Joyce Asgari was seeking a divorce at the time of her disappearance on November 18, 1980. Joyce Asgari was planning to begin a new relationship with Jim Steele after her divorce.

Appellant was not pleased about Joyce Asgari's decision to leave him and had been trying to borrow money in order to make her a property settlement. A witness testified at trial that appellant had threatened to kill Joyce Asgari before he would give her the remaining part of the property settlement. There was conflicting testimony whether appellant had committed previous acts of physical violence on Joyce Asgari.

Joyce Asgari's body was recovered on November 23, 1980, about 80 miles from appellant's house. Patricia Blomquist, Joyce Asgari's sister-in-law, alerted the sheriff's office as to the whereabouts of the body. Blomquist, who had been having an affair with appellant, testified that appellant had taken her for a drive and had given her a detailed account of how he had killed Joyce Asgari and hidden her body. During the ride, appellant's car passed the location of Joyce Asgari's body.

A large clump of blondish or lightish brown hair was found within 15 feet of Joyce Asgari's body. A search of appellant's white Datsun truck revealed a strand of hair, which appeared to match other hair samples obtained during the investigation.

Criminologist Harley Sagara made comparisons of the hair samples and found the ranges of characteristics in the samples to be the same. He found no dissimilarities. The purpose of his hair examination was to exclude a donor; Joyce Asgari could not be excluded as the donor on each and every one of the hair samples.

A luminol test of appellant's truck revealed three spots of blood at the end of the truck bed. Two of the three spots were determined to be human blood samples.

After his arrest, appellant was taken to the Lancaster jail, where he shared a cell with John Bjornstad. Bjornstad testified that when he asked appellant why he was in jail, appellant stated he had killed his wife and that he had to pay the price, but that he was not worried about it because God was going to take care of it. . . .*

Appellant took the stand on his own behalf and presented a defense based on alibi and denial. Appellant denied having killed Joyce Asgari that morning or any other time and testified that he had gone to work as usual, although a flat tire had required his attention shortly before he got to the office. He denied the truthfulness of Blomquist's account and stated that the cut lip she had observed on November 18 was due to a near collision which he had avoided by stepping on the brakes. He also stated that he had to stop to inspect an air conditioning unit in the back of the truck after he heard the unit slip and hit a tool box, but that in every other way he managed to make his calls and to run errands. More than a dozen witnesses appeared to corroborate appellant's testimony as to where he was on the day in question and how he could not have committed the crime.

Baum's declaration filed in connection with the motion for new trial reveals that appellant maintained his innocence throughout the trial and that he at all times denied having committed the crime. It was not until appellant had been convicted of the first degree murder that he admitted to his probation officer that he killed his wife.

When Baum received news of this incident, he interviewed appellant. Appellant then informed Baum, for the first time, of the true circumstances.

## APPELLANT'S CONTENTIONS ON APPEAL

Appellant contends on appeal that his trial counsel was incompetent for:
1. Failing to investigate all facts and defenses.

. . . . . . . . . . . . . . . . . . . . . . . .*

Appellant does not contest the sufficiency of the evidence.

## DISCUSSION

. . . . . . . . . . . . . . . . . . . . . . . .*

---

*See footnote, *ante,* page 107.

A. *There Was No Incompetency of Counsel for Failure to Investigate Facts and Defenses*

■ Appellant's first assertion is that his trial counsel was ineffective in the investigation of the facts and defenses. According to appellant, his trial counsel should have asked him for his version of the facts, rather than to allow him to tell counsel only what he thought counsel wanted to hear, namely that he did not kill his wife. Moreover, appellant argues that trial counsel should have developed such issues as provocation, self-defense, involuntary manslaughter, and diminished capacity.

We do not agree. Appellant fails to cite any authorities supporting his contention that counsel should have prodded him for a different version of the facts than the one he gave counsel. The record shows that appellant lied to his trial counsel about his lack of involvement in the crime, and admitted his guilt only after conviction. Trial counsel therefore properly pursued the defense of alibi and denial, even if inconsistent defenses could have been raised. Trial counsel could not have been expected to argue for mitigating circumstances to reduce the charge of first degree murder in view of his client's emphatic denial of involvement.

*People* v. *Haskett* (1982) 30 Cal.3d 841 [180 Cal.Rptr. 640, 640 P.2d 776], is instructive. In *Haskett,* the defendant claimed inadequate representation because his attorney failed carefully to consider the defense of diminished capacity before presenting an alibi defense that was doomed to failure. Our Supreme Court held that there was no basis for the claim of inadequate representation because counsel's inability to explore fully the diminished capacity defense was entirely due to defendant's refusal to submit to a psychiatric examination until just before trial. The court in *Haskett* stated that a defendant cannot complain of inadequate investigation caused by his own failure to cooperate and that defense counsel's decision not to pursue the diminished capacity defense was based on the rational conclusion that as a tactical matter, the defense would be unwise.

The *Haskett* court explained its decision as follows: "Inasmuch as any inadequacy in Mr. Lyon's investigation of diminished capacity was attributable to defendant's reluctance to cooperate, we need not pause to weigh the relative strengths and weaknesses of the alibi defense against those of the possible diminished capacity argument in this case. Because the two were inconsistent, defense counsel was put to an unavoidable but difficult choice. We will not employ the advantage of hindsight to condemn his chosen path, nor will we characterize as incompetence counsel's presentation of a defense that his client *elects voluntarily to offer.* A defendant exercises rather than surrenders the right to make '*his* defense' (*Faretta* v.

*California* (1975) 422 U.S. 806, 821 [45 L.Ed.2d 562, 573, 95 S.Ct. 2525]) when his counsel, even against his own judgment as to the better tactical approach, agrees to present the defense on which the defendant chooses to rely." (*Id.*, at p. 853.) (Italics added.)

In the present appeal, appellant's consistent denial of involvement in the killing similarly amounts to a failure to cooperate. Insofar as appellant himself concealed the underlying facts and held himself out as innocent, he is the only one to blame for his predicament. He prevented his trial counsel from exploring the defenses he now seeks to raise.

The record demonstrates no lack of due diligence or investigative action on the part of counsel. Counsel presented 15 defense witnesses to support the alibi defense. Appellant himself testified in great detail about how he could not have committed the crime and where he allegedly was located when the murder apparently took place. Counsel's defense was so successful at the first trial that the jury deadlocked.

The cases relied on by appellant are distinguishable. For example, in *In re Saunders* (1970) 2 Cal.3d 1033 [88 Cal.Rptr. 633, 472 P.2d 921], defense counsel had decided not to raise the diminished capacity defense without a consulting medical opinion, with full knowledge that medical reports were in existence. Our Supreme Court granted Saunders' petition for writ of habeas corpus on grounds that Saunders had been denied the right to effective assistance of counsel. However, the *Saunders* court's analysis of the situation involved the consideration of two factors: (1) trial counsel in *Saunders* had failed to follow the lead afforded by information in his possession; and (2) the defense actually offered at trial had been insubstantial. The *Saunders* court determined that the failure of counsel to follow the lead in his possession precluded counsel from making a rational decision on the question of the diminished capacity defense.

In the present appeal, neither of the two controlling factors considered in *Saunders* is present. Appellant's counsel did not have any information revealing appellant's guilt in his possession so as to have reason to contemplate the diminished capacity and other defenses appellant now seeks to assert. Neither was the defense offered insubstantial.

Appellant next relies on *People* v. *Shells* (1971) 4 Cal.3d 626 [94 Cal.Rptr. 275, 483 P.2d 1227], which follows the *Saunders* decision. There, the defendant wanted to take the stand and testify regarding an alibi, but did not. Defense counsel did not check on the truthfulness of a prior felony conviction allegation, relied on the word of the prosecutor, and kept the defendant off the stand.

The *Shells* court noted that, "[c]*learly if counsel had undertaken a minimal* investigation into the truth of the allegation of prior conviction—which investigation in this case would have involved *no more than a visit to the clerk of the very court* in which the case was being tried—*he would have discovered* that the allegation of prior felony conviction was untrue." (*Id.,* at p. 631.) (Italics added.)

In the present appeal, there is no indication that counsel could have discovered the truth of appellant's actions by further probing, given the consistent denials by appellant and his carefully constructed alibi. Similarly, unlike *Shells,* appellant was not deprived of the opportunity to testify on his own behalf.

Finally, appellant's reliance on *In re Miller* (1973) 33 Cal.App.3d 1005 [109 Cal.Rptr. 648], is equally misplaced. In *Miller,* trial counsel had a strong indication that his client was suffering from a mental disease but nevertheless ignored the client's medical history. In the present appeal, counsel never learned of appellant's possible diminished capacity, namely, his grogginess due to sleeping pills taken the night before the incident, until after trial.

For the foregoing reasons, we reject appellant's assertions regarding the failure of his trial counsel to investigate facts and other defenses.

B. *There Was No Incompetency of Counsel for Failure to Object to Leading Questions*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .*

C. *There Was No Incompetency of Counsel for Failure to Seek an Instruction on Lesser Included Offenses*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .*

For the foregoing reasons, we affirm the judgment entered below.

Klein, P. J., and Danielson, J., concurred.

---

*See footnote, *ante,* page 107.